IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Lee Fisher,<br><br>              Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>              Respondents. | No. CV-13-08267-PCT-PGR (ESW)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES SENIOR DISTRICT JUDGE:**

On November 7, 2013, Robert Lee Fisher ("Petitioner") filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") (Doc. 1). On April 7, 2014, Respondents filed their Answer (Doc. 11). Petitioner did not file a reply. The matter is deemed ripe for consideration.[1]

Petitioner raises four grounds for habeas relief in the Petition. The undersigned finds that three of the grounds are procedurally barred and the final ground is meritless. It is therefore recommended that the Petition be denied.

---

[1] The case was reassigned to U.S. Magistrate Judge Eileen S. Willett on November 14, 2014.

# I. BACKGROUND

## A. Petitioner's Convictions

On January 9, 2006, Petitioner stabbed his mother 34 times in her home in Kingman, Arizona. (Doc. 11-7 at 158).[2] Petitioner's mother also suffered six additional defensive wounds to her arms and hands. (*Id*.). One stab wound cut Petitioner's mother's carotid artery. (Doc. 11-5 at 39). Petitioner's mother died from blood loss. (Doc. 11-5 at 49). A fire in the home of Petitioner's mother that began after the stabbing led to the discovery of her body. (Doc. 11-7 at 158).

On January 16, 2006, the Mohave County Grand Jury indicted Petitioner for first degree murder, arson of an occupied structure, and aggravated assault. (Doc. 11-1 at 2-3). Petitioner's trial commenced on June 3, 2008. (Doc. 11-7 at 20). Petitioner raised the affirmative defense that he was guilty except insane. (Doc. 11-7 at 159). The trial court appointed two doctors to examine Petitioner and assess Petitioner's competency to stand trial and Petitioner's mental condition at the time of the offense. (*Id*.). Dr. Daniel Malatesta opined that Petitioner was not competent to stand trial and could not distinguish right from wrong at the time of the offense. (*Id*.). The second doctor, Dr. Vasilios Kaperonis, disagreed with Dr. Malatesta. (*Id*.). Dr. Kaperonis opined that Petitioner was competent to stand trial, but found that there was insufficient evidence to assess Petitioner's mental state at the time of the offense. (*Id*.). On June 1, 2007, the trial court found that Petitioner was incompetent to stand trial and ordered Petitioner remanded to the custody of the Arizona State Hospital for competency restoration proceedings. (Doc. 11-1 at 28).

Dr. Edward Jasinski treated Petitioner at the Arizona State Hospital. (*Id*.). After seven months of treatment, Dr. Jasinski found that Petitioner had been restored to competency. (Doc. 11-1 at 32). Dr. Jasinski also assessed that Petitioner suffered from a

---

[2] Citations to pages within exhibits to Respondents' Answer (Doc. 11) refer to the page numbers assigned by the Clerk of Court when filed on April 7, 2014. For example, Exhibit A to Respondents' Answer is filed as Document 11-1. A citation to a page within Exhibit A would appear as (Doc. 11-1 at __).

mental illness, most likely a Psychotic Disorder, Not Otherwise Specified. (*Id*.).

The trial court set a competency hearing for March 2008. (Doc. 11-7 at 159). The hearing, however, was later vacated upon defense counsel's motion. (*Id*.). Defense counsel stated that after conferring with Petitioner, he concluded that Petitioner was "presently competent to stand trial and [was] competent to assist his attorney in his defense." (*Id*.). Yet two months later, defense counsel requested that Petitioner's competency be reexamined after observing that Petitioner was delusional. (*Id*.). The trial court appointed a fourth doctor, Dr. Mark Harvancik, to examine Petitioner. Dr. Harvancik assessed that Petitioner was competent to stand trial and aid in his defense in spite of Petitioner's probable mental illness. (*Id*.). The trial court agreed with Dr. Harvancik's report and found Petitioner competent to stand trial. (*Id*.).

After both sides rested their cases, the trial judge instructed the jury on the lesser-included defense of second degree murder. (Doc. 11-6 at 192). On June 13, 2008, the jury found Petitioner guilty of second degree murder and aggravated assault. (Doc. 11-7 at 5-6). The jury found Petitioner not guilty of the arson charge. (*Id*.). The trial court sentenced Petitioner to 24.75 years in prison. (Doc. 11-7 at 159; Doc. 11-1 at 52-53). Petitioner is currently incarcerated at the Arizona State Prison Complex in Florence, Arizona.

### B. Direct Appeal, State Post-Conviction Relief, and Petitions for Review

Following his 2008 convictions and sentencing, Petitioner appealed to the Arizona Court of Appeals. Petitioner presented the following five arguments on appeal:

1. Petitioner was incompetent to stand trial and was convicted in violation of due process. (Doc. 11-7 at 28). This claim consisted of three subparts, which argued that (a) Petitioner was tried, convicted, and sentenced while incompetent; (b) Petitioner was denied the right to a competency hearing and was improperly assessed the burden of proving his competency; and (c) the trial court abused its discretion when it failed to order further evaluations and competency proceedings. (Doc. 11-7 at 36, 38, 40).

2. The trial court committed fundamental error and deprived

Petitioner of his rights under the Fifth, Sixth, and Fourteenth Amendments when it failed to accurately instruct the jury in preliminary instructions regarding the presumption of innocence and the State's burden to prove all elements of the charges beyond a reasonable doubt. (Doc. 11-7 at 41).

3. The trial court's admission of a psychologist's testimony in the State's rebuttal case limited to his opinions regarding Petitioner's competency to stand trial was prejudicial reversible error. (Doc. 11-7 at 47).

4. Repeated references by the State's psychologist to Petitioner's prior arrests, incarceration, and criminal history constituted fundamental error. (Doc. 11-7 at 49).

5. The State failed to prove beyond a reasonable doubt that Petitioner was on parole and had two or more historical prior felony convictions at the time of the offenses. The trial court therefore abused its discretion by imposing an aggravated prison term. (Doc. 11-7 at 51).

In its April 20, 2010 decision, the Arizona Court of Appeals affirmed Petitioner's convictions and sentence for second degree murder. (Doc. 11-7 at 159). The Court also affirmed Petitioner's conviction for aggravated assault, but found a sentencing error and remanded the aggravated assault conviction for re-sentencing. (Doc. 11-7 at 167). Petitioner did not seek review of the Arizona Court of Appeals decision.

On May 27, 2010, Petitioner filed a notice of post-conviction relief ("PCR"). On January 6, 2011, Petitioner's PCR counsel filed a PCR petition. (Doc. 11-7 at 169). The PCR petition presented the following four arguments:

1. Since the subsections of the aggravated assault statute set forth distinct crimes with different elements, Petitioner was deprived of his right to a unanimous verdict based on the fact that the jury was not instructed that it needed to agree on which subsection of the aggravated assault statute the defendant was guilty of violating. (Doc. 11-7 at 172).

2. The court's second degree murder instruction deprived Petitioner of his right to a unanimous verdict based on the fact that the jury was instructed they did not need to agree unanimously which subsection of statute the defendant was

     guilty of violating.  (Doc. 11-7 at 174).

3. The omission of the mental state element in the third definition the court provided for reckless second degree murder amounted to reversible, fundamental error. (Doc. 11-7 at 175).

4. Petitioner's trial and appellate counsel were ineffective for failing to raise the above three claims during trial and on appeal.  (Doc. 11-7 at 176-79).

On May 16, 2011, the trial court denied Petitioner's PCR petition.  (Doc. 11-7 at 196).  Petitioner then filed a petition for review with the Arizona Court of Appeals.  On March 28, 2013, the Court denied review.  (Doc. 11-7 at 199).  On April 25, 2013, Petitioner petitioned the Arizona Supreme Court for review, which the Arizona Supreme Court denied on August 20, 2013.  (Doc. 11-7 at 203).  Petitioner timely sought federal habeas relief on November 7, 2013.  (Doc. 1).

## II.  FEDERAL HABEAS LAW

Respondents do not argue, and the undersigned does not find, that the Petition is barred by the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The undersigned concurs with Respondents' argument that the majority of Petitioner's claims are procedurally barred.

### A. Exhaustion-of-State-Remedies Doctrine

For over one hundred years, it has been settled that a "state prisoner must normally exhaust available state remedies before a writ of habeas corpus can be granted by the federal courts." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) ("It has been settled since *Ex parte Royall*, 117 U.S. 241, 6 S. Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus."). The rationale for the doctrine relates to the policy of federal-state comity.  *Picard*, 404 U.S. at 275 (1971).  The comity policy is designed to give a state the initial opportunity to review and correct alleged federal rights violations of its state prisoners. *Id*.  In the U.S.

Supreme Court's words, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950); *see also Reed v. Ross*, 468 U.S. 1, 11 (1984) ("[W]e have long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power.") (citations and internal quotation marks omitted).

The exhaustion doctrine is codified at 28 U.S.C. § 2254. That statute provides that a habeas petition may not be granted unless the petitioner has (i) "exhausted" the available state court remedies; (ii) shown that there is an "absence of available State corrective process"; or (iii) shown that "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

Case law has clarified that in order to "exhaust" state court remedies, a petitioner's federal claims must have been "fully and fairly presented" in state court. *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014). To "fully and fairly present" a federal claim, a petitioner must present both (i) the operative facts and (ii) the federal legal theory on which his or her claim is based. This test turns on whether a petitioner "explicitly alerted" a state court that he or she was making a federal constitutional claim. *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1204–05 (9th Cir. 2005). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted); *see also Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001) (federal basis of a claim must be "explicit either by citing federal law or the decisions of federal courts, even if the federal basis is self-evident or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds").

### B. Procedural Default Doctrine

If a claim was presented in state court, and the court expressly invoked a state

procedural rule in denying relief, then the claim is procedurally defaulted in a federal habeas proceeding. *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Even if a claim was not presented in state court, a claim may be procedurally defaulted in a federal habeas proceeding if the claim would now be barred in state court under the state's procedural rules. *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Similar to the rationale of the exhaustion doctrine, the procedural default doctrine is rooted in the general principle that federal courts will not disturb state court judgments based on adequate and independent state grounds. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). A habeas petitioner who has failed to meet the state's procedural requirements for presenting his or her federal claims has deprived the state courts of an opportunity to address those claims in the first instance. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

As alluded to above, a procedural default determination requires a finding that the relevant state procedural rule is an adequate and independent rule. *See Id*. at 729-30. An adequate and independent state rule is clear, consistently applied, and well-established at the time of a petitioner's purported default. *Greenway v. Schriro*, 653 F.3d 790, 797-98 (9th Cir. 2011); s*ee also Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 74-75 (9th Cir. 1996). An independent state rule cannot be interwoven with federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The ultimate burden of proving the adequacy of a state procedural bar is on the state. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). If the state meets its burden, a petitioner may overcome a procedural default by proving one of two exceptions.

In the first exception, the petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law. *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014). To demonstrate "cause," a petitioner must show that some objective factor external to the petitioner impeded his or her efforts to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004). To demonstrate "prejudice," the petitioner

must show that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 ("Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.").

In the second exception, a petitioner must show that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780. This exception is rare and only applied in extraordinary cases. *Wood v. Ryan*, 693 F.3d 1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). The exception occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense that is the subject of the barred claim." *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327).

**C. Reviewing Federal Habeas Claims on the Merits**

In reviewing the merits of a petitioner's claims, AEDPA requires federal courts to defer to the last reasoned state court decision. *Woods*, 764 F.3d at 1120; *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his claims either:

> 1. [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

As to the first entitlement to relief above, "clearly established federal law" refers to the holdings of the U.S. Supreme Court's decisions applicable at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly

established federal law if the state court (i) "applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

As to the second entitlement to relief above, factual determinations by state courts are presumed correct unless the petitioner can show by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). That is, a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Richter*, 562 U.S. at 101; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### III. ANALYSIS OF THE PETITION

#### A. Grounds One, Two and Three are Procedurally Barred

The first three grounds in the Petition allege as follows:

1. In Ground One, Petitioner asserts that "he was legally insane at the time of his arrest. [Petitioner] is being held in violation of the [constitution] and laws of the United States. [Petitioner] claims that he should be receiving treatment at the Arizona State Hospital." (Doc. 1 at 6). Petitioner admits that he did not present the ground to the Arizona state courts, but asserts that he "pleaded with counsel that they [pursue] the insanity issue with the Court of Appeals but [appellate] counsel [pursued frivolous] issues instead . . ." (*Id.*).

2. In Ground Two, Petitioner alleges that he "was refused a right to have a bi-furcated trial and was forced to not testify [on] his own behalf in violation of due process of the law." (Doc. 1 at 7). Petitioner also admits that he did not raise this issue in Arizona state court proceedings, but again asserts that he "requested numerous times to bring this issue to light, [Petitioner's] counsel refused to bring this issue up in [their]

appeal. [Petitioner] pleads that the courts will [accept] these new grounds." (*Id.*).

3. In Ground Three, Petitioner states that he "was denied due process of the law when [the] jury asked a question during [deliberations] seeking a . . . clearer instruction on insanity." (Doc. 1 at 8). Like in Grounds One and Two, Petitioner admits that he did not present this claim to the Arizona state courts, but states that he "talked to counsel about insanity instruction but counsel refused to [pursue] further instructions and [appellate] counsel refused to bring up these issues in appeal against [Petitioner's] wishes." (*Id.*).

Petitioner did not challenge the claims presented in Grounds One, Two, and Three in Arizona state court.[3] Yet returning to Arizona state court for determination of those issues would be futile as the Arizona Rules of Criminal Procedure would preclude relief.[4] The claims contained in Grounds One, Two, and Three are therefore procedurally defaulted. *Beaty*, 303 F.3d at 987 (a claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred") (quoting *Coleman*, 501 U.S. at 735 n. 1)). Accordingly, the undersigned recommends that Grounds One, Two, and Three of the Petition be denied.

---

[3] To the extent the Petition also argues that his trial and appellate counsel were ineffective for failing to raise the claims set forth in Grounds One, Two, and Three in the Arizona state proceedings, Petitioner did not present such claim in his PCR petition. Thus, any such ineffective assistance of counsel claim is unexhausted and procedurally defaulted for the same reasons Grounds One, Two, and Three are procedurally defaulted.

[4] Rule 32.2 of the Arizona Rules of Criminal Procedure precludes a defendant from relief based upon any ground (i) raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24; (ii) finally adjudicated on the merits on appeal or in any previous collateral proceedings; or (iii) that has been waived at trial, on appeal, or in any previous collateral proceedings. As Grounds One, Two, and Three could have been raised on direct appeal or in the PCR petition, and do not fit within one of the rule's exceptions, Rule 32.2 precludes Petitioner from seeking relief. *See Stewart v. Smith*, 536 U.S. 856, 861 (2002) (holding that Rule 32.2(a) is an adequate and independent procedural bar). In addition, Grounds One, Two, and Three would be precluded as untimely under Rule 32.4 of the Arizona Rules of Criminal Procedure. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (where habeas petitioner was time-barred from presenting his claims in state court, claims were procedurally defaulted).

### B. Petitioner's Procedural Default is Not Excused

In spite of the procedural defaults, the merits of Petitioner's Grounds One, Two, and Three are to be reviewed if Petitioner (i) shows cause for the default and actual prejudice as a result of the alleged violation of federal law or (ii) shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013) (although finding the petitioner's claims to be procedurally defaulted, stating that "[n]onetheless, we will review the merits if [the petitioner] can show cause and prejudice or, alternatively, a fundamental miscarriage of justice") (quoting *Beaty*, 303 F.3d at 987)).

Petitioner offers no reason to excuse the above procedural defaults. Although Respondents thoroughly briefed the procedural default issue in their Answer (Doc. 10), Petitioner has chosen not to file a reply.

Moreover, Petitioner does not qualify for the narrow exception to a procedural default set forth in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). First, the *Martinez* exception does not apply to claims not asserting the ineffective assistance of counsel ("IAC"). *Hunton v. Sinclair*, 732 F.3d 1124, 1126 (9th Cir. 2013) (explaining that the *Martinez* exception does not extend beyond IAC claims). The exception only applies to IAC claims that were not presented in a PCR petition. Where a petitioner has PCR counsel, the petitioner must show that PCR counsel was ineffective for failing to raise an IAC claim. *Martinez*, 132 S.Ct. at 1318. In addition, a petitioner must show that the unexhausted IAC claim is "substantial" (i.e. the claim has some merit) in order to qualify for the *Martinez* exception. *Id*. (explaining that to overcome the default, a petitioner must also show that the underlying IAC claim is a substantial one, meaning the claim has some merit).

Here, to the extent that the Petition does include IAC claims, Petitioner does not allege that Petitioner's PCR counsel should have raised the claims in the PCR petition. Further, the IAC claims as arguably presented in the Petition are speculative, without factual support, and are therefore insubstantial. *Martinez*, 132 S.Ct. at 1319 (a claim is

insubstantial if it "does not have any merit or . . . is wholly without factual support"). Accordingly, any claim of ineffective assistance of PCR counsel for failure to raise the IAC claims in Petitioner's PCR petition would not constitute "cause" to excuse procedural default under *Martinez*. It is thus recommended that the procedural default determinations set forth above for Grounds One, Two, and Three not be excused.

### C. Ground Four Should be Denied on the Merits

In Ground Four, Petitioner alleges that he "was forced to face trial while incompetent." (Doc. 1 at 9). Petitioner raised this claim on direct appeal, which was fully and fairly presented to the Arizona Court of Appeals as a federal constitutional claim. The claim is therefore exhausted.[5] (Doc. 11-7 at 36).

There are two types of competency claims: (i) procedural due process claims and (ii) substantive due process claims. Procedural due process claims arise where a state court failed to hold a competency hearing when there was a "bona fide doubt" about the petitioner's competence. Substantive due process claims arise where a petitioner was tried and convicted or sentenced while he or she was actually incompetent. *See, e.g., Davis*, 384 F.3d at 644; *Williams v. Woodford*, 384 F.3d 567, 603–10 (9th Cir. 2004); *Boyde v. Brown*, 404 F.3d 1159, 1165 n. 6 (9th Cir. 2005), *amended on other grounds,* 421 F.3d 1154 (9th Cir. 2005) (distinguishing petitioner's "substantive" due process claim from a "procedural" due process claim).

---

[5] Respondents appear to argue that this claim is non-cognizable as it does not specify what federal constitutional provisions the state court violated. (Doc. 11 at 15-16). The undersigned finds that while Petitioner's claim is not perfectly clear, it presents a cognizable claim. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (pro se pleadings should be construed liberally). Page five of the Petition instructs a petitioner to "state every ground on which you claim that you are being held in violation" of federal law. In the section containing Ground Four, Petitioner indicates that he presented the claim to the Arizona Court of Appeals. Construing the Petition liberally, the undersigned finds that Petitioner has presented a cognizable habeas claim. *See Hernandez v. Holland*, 750 F.3d 843, 858 (9th Cir. 2014) (a petitioner presented a habeas claim simply alleging that the "denial of continuance or a mistrial" was "prejudicial error." The petitioner stated in his habeas petition that he raised the claim in the state court. Finding that the claim was fairly presented to the state court, and construing the habeas petition liberally, the Court found that the petitioner "has clearly presented us with the lack of continuance issue").

The importance of distinguishing between procedural and substantive due process competency claims pertains to the evidence that a habeas court may consider in reviewing the claim.  When reviewing a procedural due process competency claim, a habeas court may only review the evidence that was before the trial judge.  *U.S. v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993) (in addressing a procedural incompetence claim, a federal habeas court may only consider the evidence that was before the trial court); *Williams*, 384 F.3d at 604.  In contrast, when reviewing a substantive due process competency claim, a federal habeas court may consider new evidence, although retrospective competency determinations are discouraged.   *Williams*, 384 F.3d at 608 (explaining that while the court may consider facts and evidence not available to the state trial court in reviewing a substantive due process competency claim, retrospective determinations of incompetence are disfavored and considerable weight is given to lack of contemporaneous evidence of a petitioner's incompetence to stand trial); *see also Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985).

Regarding a procedural due process competency claim, clearly established federal law provides that where the evidence before the trial court raises a "bona fide doubt" as to a defendant's competence to stand trial, the judge on his or her own motion must conduct a competency hearing.  *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Drope v. Missouri*, 420 U.S. 162, 172-73 (1975).  Under *Pate* and *Drope*, the test for such a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial."  *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc).  "Although no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's demeanor before the trial judge, irrational behavior of the defendant, and available medical evaluations of the defendant's competence to stand trial."  *Williams*, 384 F.3d at 604; *see also Drope*, 420 U.S. at 180.  A state court's finding that no competency hearing is required is a factual determination entitled to deference unless it is objectively unreasonable.  *See Mendez v.*

*Knowles*, 556 F.3d 757, 771 (9th Cir. 2009); *Davis* 384 F.3d at 644.

Regarding a substantive due process competency claim, clearly established federal law provides that a criminal defendant is only competent to stand trial if the defendant has (i) a rational as well as factual understanding of the proceedings against him or her and (ii) sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding. *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). "[C]ompetence to stand trial does not consist merely of passively observing the proceedings. Rather, it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001). A state court's factual determination that a defendant is competent to stand trial is presumed correct. 28 U.S.C. § 2254(e)(1); *see also Demosthenes v. Baal*, 495 U.S. 731, 734-35 (1990) (stating that a state court's conclusion regarding a defendant's competency is entitled to the presumption of correctness under federal habeas corpus statute); *Maggio v. Fulford*, 462 U.S. 111, 117-18 (1983) (per curiam).

Here, Petitioner presents a substantive due process claim. *See Boyde v. Brown*, 404 F.3d 1159, 1165 n.6 (9th Cir. 2005) (petitioner's claim that he was incompetent to stand trial is a "substantive" incompetence claim). The last reasoned state court decision on this claim is the April 20, 2010 Arizona Court of Appeals decision. (Doc. 11-7 at 158). To succeed on his competency claim, Petitioner must show that the Arizona Court of Appeals' decision is (i) contrary to, or involved an unreasonable application of, clearly established Federal law (as determined by the U.S. Supreme Court) or (ii) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

The Arizona Court of Appeals applied *Dusky* to Petitioner's substantive due process competency claim and found that "reasonable evidence supported the trial court's conclusion that [Petitioner] was competent to stand trial." (Doc. 11-7 at 161). The Court noted that:

> Three of the four doctors who examined [Petitioner] found him competent to stand trial and suggested he could be malingering. Dr. Malatesta found no evidence of delusional thinking as it related to [Petitioner's] awareness of court proceedings, a fair understanding of the charges against him, and the nature of his relationship with his attorney. Likewise, after seven months of restoration treatment, Dr. Jasinski found 'to a reasonable degree of psychological certainty [Petitioner] understands the nature and object of the proceedings against him . . . [and] has the ability to assist an attorney in the preparation of his defense.' Finally, one week before trial, Dr. Harvancik found that [Petitioner] appeared to be exaggerating his symptoms, his symptoms were controlled by medication and did not interfere with the evaluation process, and he was competent to stand trial and aid in his defense.
>
> * * *
>
> In addition, the [trial] court received numerous letters from [Petitioner] prior to trial; some of which reflected 'a guy who understands the legal system' and who can 'file subjective motions that make sense' and others that 'reflect someone who is operating with a different mind-set that does not really have an attachment with reality.' The [trial] court is entitled to rely on experts to assist its assessment of a defendant's competency and may also rely on the court's observations in making such determinations. *See Bishop v. Superior Court*, 150 Ariz. 404, 409, 724 P.2d 23, 28 (1986).

(Doc. 11-7 at 160-61).

It is Petitioner's burden to rebut the factual determinations made by the Arizona state courts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (a habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"). Petitioner does not bring forth any new objective evidence or point to any objective evidence in the record that suggests the Arizona state court's determination that Petitioner was competent to stand trial was objectively unreasonable. Instead, Petitioner merely asserts that he was "returned from the State Hospital with [delusional] thoughts . . . and was [experiencing] auditory as well as visual [hallucinations] during the trial." (Doc. 1 at 9). Petitioner also states that he "believ[ed]

1  that he was in a fake trial and [actually] believed that his mother [was] still alive." (*Id.*).
2  Such self-serving statements are insufficient to rebut the presumption that the state
3  court's factual determination that Petitioner was competent to stand trial is correct. *See*
4  *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (finding petitioner's own self-
5  serving statements insufficient to support IAC claim without corroborating evidence).

After reviewing the record, the undersigned concurs with the Arizona Court of Appeals' determination that reasonable evidence supported the trial court's conclusion that Petitioner was competent to stand trial. For example, in his January 30, 2008 report, Dr. Jasinski noted that when Petitioner was removed from anti-psychotic medication, he reported having a "delusion." (Doc. 11-1 at 31). Dr. Jasinski noted that "[s]elf-report of having delusions by an individual who is actually experiencing [the delusions] is very unlikely." (*Id.*). Dr. Jasinski also found that Plaintiff's behavior during the evaluations indicate that he had a "good understanding of available legal strategies and how he would be able to go about cooperating with an attorney in his own best interest." (Doc. 11-1 at 32). Dr. Jasinski did find that Petitioner "has a primary mental illness, most likely a Psychotic Disorder, Not Otherwise Specified." (*Id.*). But Dr. Jasinski also reported that:

> [I]t is my opinion after working closely with [Petitioner] for the past seven months, that he is currently competent to stand trial and occasionally reports ongoing symptoms in an attempt to avoid being returned to jail to deal with his current legal situation. [Petitioner's] most recent submission to the Court dated January 18, 2008 clearly documents his current rational understanding of his situation as well as his fear of being returned to jail.

(*Id.*).

In his competency evaluation, Dr. Mark J. Harvancik wrote that Petitioner's score on the Structured Interview of Reported Symptoms ("SIRS") examination "appeared to be characteristic of individuals who are feigning a mental disorder and is rarely seen in clients responding truthfully." (Doc. 11-1 at 40). Dr. Harvancik assessed that:

> [W]hile [Petitioner] appeared to be suffering with signs and symptoms of a serious mental illness, symptoms appeared to be controlled with medication treatment, his seeming

> responses to internal stimuli did not appear to be credible, and in combination with SIRS results, suggested that he was exaggerating his symptoms. As such, symptoms did not appear to interfere with [Petitioner's] ability to participate in the evaluation process.

(Doc. 11-1 at 41). Finally, Dr. Harvancik assessed that Plaintiff "appeared to possess average intelligence, his memory appeared to be intact, and he appeared to possess considerable knowledge about the legal system and proceedings likely resulting from the extensive education he received through the [Arizona State Hospital] Restoration Program." (Doc. 11-1 at 42).

Based on the record, the undersigned finds that the Arizona state courts' determinations that Petitioner was competent to stand trial were not objectively unreasonable. The undersigned further finds that the Arizona Court of Appeals decision was neither contrary to nor an unreasonable application of clearly established federal law. Petitioner has thus failed to establish a violation of his constitutional right not to be tried and convicted while incompetent. Accordingly, it is recommended that the Court deny Ground Four on the merits.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that the Court deny and dismiss the Petition (Doc. 1) with prejudice.

Accordingly,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of three of the grounds in the Petition is justified by a plain procedural bar and because Petitioner has not made a substantial showing of the denial of a constitutional right in his remaining claim for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 31st day of March, 2015.

_____
Eileen S. Willett
United States Magistrate Judge